**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**KRISTEN MCGONDEL,**

**Plaintiff,**

**v.** **Case No.**

**GULFSIDE SUPPLY, INC. a**
**a foreign profit corporation,**
**d/b/a Kimal Lumber,**

**Defendant.**
______________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, KRISTEN MCGONDEL ("Ms. McGondel" or "Plaintiff"), hereby sues Defendant, GULFSIDE SUPPLY, INC., a Florida profit corporation d/b/a Kimal Lumber ("Defendant"), and alleges as follows:

## JURISDICTION AND VENUE

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII").

2. This Court has subject matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331 because they arise under federal law.

3. Venue is proper in this District pursuant to to 28 U.S.C. § 1391 because the unlawful employment practices alleged herein occurred in this District.

## PARTIES

4. At all times material, Plaintiff was a resident of Sarasota County, Florida and was employed by Defendant.

5. Defendant is a covered employer within the meaning of Title VII, and Defendant's discriminatory conduct occurred in Sarasota County, Florida.

## ADMINISTRATIVE EXHAUSTION

6. Prior to filing this action, Plaintiff performed all conditions precedent necessary to the maintenance of this action or such conditions precedent have been waived, including filing a charge of discrimination with the EEOC and Florida Commission on Human Relations alleging sexual harassment and retaliation on June 25, 2026.

7. Plaintiff received a right to sue letter from the EEOC dated August 22, 2026.

## FACTUAL ALLEGATIONS

8. In October 2022, Plaintiff, Ms. McGondel, began working for Defendant as an Office Administrator.

9. As Office Administrator, Ms. McGondel was responsible for reporting to her direct supervisor and Branch Manager, Blaine Mitchell ("Mitchell").

10. Beginning around her first week of employment, Ms. McGondel was subjected to unwarranted sexual harassment from Mitchell.

11. In December 2022, Ms. McGondel and four other female colleagues were gifted sexually provocative dresses by Mitchell as holiday gifts. Shortly thereafter, Ms. McGondel was gifted an additional dress and a pair of crotchless panties.

12. Although Ms. McGondel found these gifts inappropriate and unprofessional, she initially chose not to report them because she was a relatively new employee and sought to avoid conflict.

13. Approximately six (6) months into Ms. McGondel's employment, in or around April 2023, Mitchell began making repeated comments about her appearance, including remarks about how Ms. McGondel looked in certain colors and suggestions that she wear dresses or "short shorts" more often.

14. Mitchell's inappropriate and sexually charged comments eventually became so persistent and severe that his focus shifted from Ms. McGondel's work performance to Ms. McGondel's physical appearance and/or receptiveness to his unsolicited advances.

15. Between 2022 and 2023, Mitchell's text and email communications to Ms. McGondel also became increasingly inappropriate. For example, Mitchell began sending text messages such as "Thanks, beautiful," followed by a kissing emoji.

16. Mitchell's conduct subsequently progressed to include unwanted physical contact. On several occasions Mitchell touched Ms. McGondel without consent

under the pretense of removing lint or hair from her shoulders and back. Ms. McGondel perceived these actions as unwanted sexual advances.

17. Ms. McGondel hesitated reporting Mitchell's harassment due to his standing with Defendant's leadership. Mitchell was very well liked and friendly with many of Defendant's managers, including Defendant's General Manager, Bob Hinman ("Hinman").

18. Rather than reporting Mitchell's conduct, Ms. McGondel initially attempted to deflect Mitchell's advances, which affected both her job performance and her treatment at work.

19. When Mitchell was pleased with Ms. McGondel's appearance or attention, he approved her time off, sometimes with pay, and once instructed Ms. McGondel not to disclose it. When dissatisfied, Mitchell denied Ms. McGondel's requests for time off and prohibited use of paid leave, resulting in lost wages.

20. Mitchell's inconsistent treatment made clear to Ms. McGondel that her employment conditions were driven by Mitchell's personal and sexual desires rather than performance or policy.

21. When Ms. McGondel rejected Mitchell's advances outright, her treatment worsened, evidencing retaliation.

22. Despite these circumstances, Ms. McGondel continued to focus on performing her job duties. However, the work environment continuously

deteriorated. Ms. McGondel's coworkers reported fear of interacting with her due to potential retaliation from Mitchell.

23. Ms. McGondel became incredibly isolated and afraid to seek help.

24. In or around October 2025, Mitchell went on medical leave. With Mitchell absent from the workplace, Ms. McGondel built up courage and made a protected complaint to Defendant's Operations Manager.

25. By the time Ms. McGondel made this complaint, the hostile environment had already caused her significant physical and emotional harm, including migraines, approximately twenty (20) pounds of weight loss, and the need for prescribed medications for depression, anxiety, and sleep.

26. By November 2025, Defendant failed to take any remedial action before Mitchell returned to the workplace.

27. When Mitchell returned, Defendant's Operations Manager disclosed Ms. McGondel's complaint directly to him; thus, exacerbating the situation.

28. The outcome of Ms. McGondel's complaint validated her reasonable and legitimate concern that reporting Mitchell's misconduct would either be futile or worsen it, jeopardizing her safety.

29. For around one month after Mitchell's return to the workplace, Mitchell isolated Ms. McGondel and abdicated his duties as supervisor. Mitchell provided Ms. McGondel with negligible supervision and/or feedback.

30. Later on, whenever Ms. McGondel was seen alone, Mitchell began confronting her in a hostile manner.

31. In early May 2026, Ms. McGondel found herself alone with Mitchell in his office which made her feel extremely uncomfortable.

32. Shortly after leaving Mitchell's office, Ms. McGondel discovered that Mitchell had been taking pictures of his genitals in his office and sending them to another female colleague from his work phone.

33. The revelation described in the preceding paragraph caused Ms. McGondel to experience significant fear, particularly given the close temporal proximity between her isolated encounter with Mitchell in his office and the discovery.

34. Due to Mitchell's close relationship with Defendant's leadership, and given Defendant's failure to address Ms. McGondel's October 2025 complaint, Ms. McGondel reasonably felt she had no option but to resign.

35. On May 17, 2026, Ms. McGondel emailed Defendant's General Manager, Hinman, and stated that she was forced to resign due to an ongoing hostile work environment, inappropriate treatment, and being subjected to workplace seclusion.

36. Defendant failed to respond and/or remedy the issues in a reasonable time frame resulting in Ms. McGondel's constructive discharge.

37. Only after Ms. McGondel's constructive discharge, and only after receiving

several anonymous complaints about Mitchell, did Defendant investigate Mitchell.

38. On or around June 05, 2026, Defendant terminated Mitchell's employment for violating Company policies, substantiating Ms. McGondel's allegations.

39. Similarly, after Ms. McGondel was constructively discharged, Defendant's General Manager, Hinman, was disciplined in connection with the investigation and for conduct inconsistent with Company policy. Hinman was warned that any further violation would result in immediate termination, highlighting the severity of his misconduct and further substantiating Ms. McGondel's allegations.

40. A Branch Manager's repeated gifting of female employees with sexually provocative clothing, sending of flirtatious emails/text messages, making of inappropriate workplace remarks, and use of a company-issued phone to take and disseminate sexually explicit images constituted open and notorious conduct sufficient to put Defendant on notice of the misconduct.

41. The misconduct was so severe and pervasive, and so tolerated by Defendant's management, that Ms. McGondel feared reporting it, was required to do so cautiously, and ultimately left her with no reasonable alternative but to resign.

**COUNT I – SEXUALLY HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII**

42. Plaintiff realleges paragraphs 1 through 41 as if fully set forth herein.

43. Plaintiff is a member of a protected class under Title VII based on sex.

44. Defendant, through Plaintiff's direct supervisor, Mitchell, sexually harassed Plaintiff from October 2022 through May 2026 and created a sexually hostile work environment.

45. Defendant is directly and vicariously liable for all sexual harassment suffered by Plaintiff because it was engaged in and/or ratified by supervisory personnel.

46. The sexual harassment was severe and pervasive, and was motivated by Plaintiff's female sex.

47. Plaintiff has been significantly damaged by the conduct of Defendant. The harm includes, but is not limited to, emotional harm, approximately twenty pounds of weight loss, and the need for prescribed medications for depression, anxiety, and sleep.

48. Defendant was recklessly indifferent to Mitchell's sexual harassment of Plaintiff and other female colleagues.

**WHEREFORE**, Plaintiff requests this Honorable Court grant a judgment requiring Defendant to pay to Plaintiff, back-pay, front-pay, compensatory damages and punitive damages in an amount to be proved at trial, prejudgment

interest thereon, and costs and attorney's fees under Title VII, 42 U.S.C. § 2000e et al.

**COUNT II – RETALIATION**
**IN VIOLATION OF TITLE VII**

49. Plaintiff realleges paragraphs 1 through 48 as if fully set forth herein.

50. Plaintiff engaged in opposition to the sexual harassment by expressing her opposition to her direct supervisor, Mitchell, and reporting the hostile work environment to Defendant's management.

51. Defendant, through Mitchell and other agents, retaliated against Plaintiff by subjecting her to workplace seclusion, denying her paid time off, and intensifying the workplace hostility.

52. Defendant caused Plaintiff to suffer economic and emotional damages, including ridicule, shame, humiliation, fear, and anger.

**WHEREFORE**, Plaintiff requests this Honorable Court to grant a judgment requiring Defendant to pay to Plaintiff compensatory and punitive damages in an amount to be proven at trial, prejudgment interest thereon, and costs and attorney's fees under Title VII, 42 U.S.C. § 2000e et al.

**COUNT III – CONSTRUCTIVE DISCHARGE**
**IN VIOLATION OF TITLE VII**

53. Plaintiff realleges paragraphs 1 through 52 as if fully set forth herein.

54. Defendant, through Plaintiff's direct supervisor, Mitchell, sexually

harassed Plaintiff from October 2022 through May 2026.

55. Plaintiff engaged in opposition to the sexual harassment by expressing her opposition to Mitchell and reporting the hostile work environment to Defendant's management.

56. Defendant, through its agents, failed to conduct a prompt and/or thorough investigation into the matter and failed to take corrective measures.

57. Plaintiff was forced to resign due to working conditions so intolerable that a reasonable person in her position would have felt compelled to resign, including from sexual harassment and retaliation.

58. Defendant caused Plaintiff to suffer economic and emotional damages, including ridicule, shame, humiliation, fear, and anger.

**WHEREFORE**, Plaintiff requests this Honorable Court to grant a judgment requiring Defendant to pay to Plaintiff compensatory and punitive damages in an amount to be proven at trial, prejudgment interest thereon, and costs and attorney's fees under Title VII, 42 U.S.C. § 2000e et al.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury as to all issues so triable.

Respectfully submitted,

*/s/Craig L. Berman*
Craig L. Berman, Esq.
BERMAN LAW FIRM, P.A.
111 Second Ave., N.E., Suite 706
St. Petersburg, FL 33701
Phone: (727) 550-8989
Fax: (727) 894-6251
Fla. Bar No. 068977
craig@bermanlawpa.com

**COUNSEL FOR PLAINTIFF**